UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DENBRA IP HOLDINGS, LLC d/b/a | § | |
| NOTHING BUNDT CAKES | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-813-SDJ |
| | § | |
| KERRI THORNTON d/b/a ALL | § | |
| ABOUT BUNDT CAKES | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Denbra IP Holdings, LLC's ("Nothing Bundt Cakes") Motion for Preliminary Injunction. (Dkt. #2). On February 12, 2021, the Court held a hearing on the motion. Having considered the motion and the attached evidence, the argument of counsel, and the relevant law, the Court concludes that the motion should be granted.[1]

---

[1] Despite Nothing Bundt Cakes' effecting service on Thornton and Thornton's receiving emails from both Nothing Bundt Cakes' counsel and the Court regarding the impending preliminary-injunction hearing, Thornton did not appear at the preliminary-injunction hearing—nor has she otherwise appeared in this case. In fact, Thornton responded to the Court's emails and requested call-in information to attend the hearing virtually, which the Court provided. However, Thornton failed to appear, telephonically or otherwise, at the preliminary-injunction hearing.

Thus, the Court concludes that Thornton received adequate notice of the complaint, the hearing, and the issues on which the injunction was sought against her and that she had an opportunity to present her case and rebut Nothing Bundt Cakes' arguments but chose not to. *See Tisino v. R&R Consulting & Coordinating Grp., L.L.C.*, 478 F.App'x 183, 185 (5th Cir. 2012) (per curiam) ("We have recognized that 'Rule 65(a) does not specify the particular type of notice required in order properly to bring defendants in an injunction proceeding before the trial court . . . and that '[t]he form of notice is a matter for the trial court's discretion." (alterations in original) (first quoting *Plaquemines Par. Sch. Bd. v. United States*, 415 F.2d 817, 824 (5th Cir. 1969) then quoting *In re Lease Oil Antitrust Litig. (No. II)*, 200 F.3d 317, 319 (5th Cir. 2000)); *Marshall Durbin Farms, Inc. v. Nat'l Farmers Org.*, 446 F.2d 353, 356 (5th Cir. 1971) ("[T]he requirements of a fair notice hearing include notice of the claims of the opposing party and an opportunity to meet them." (quotations omitted)).

# I. BACKGROUND

Because Thornton has failed to appear in this case, the following background consists of the uncontested averments of Nothing Bundt Cakes' Director of Legal Affairs, Shannon Dean, (Dkt. #2-6), as well as the uncontested allegations in its complaint, (Dkt. #1), and preliminary-injunction motion, (Dkt. #2), which both appear to rely heavily on Dean's declaration. Nothing Bundt Cakes' principal business is the production and retail sale of Bundt cakes and accompanying gift items. Nothing Bundt Cakes operates over 300 franchise locations throughout the United States and Canada, which collectively earn over $100 million annually in revenue. Twenty-one of those franchises are located in the Dallas–Fort Worth area with two more scheduled to open.

Since 1998, the company has continuously used in interstate commerce a unique frosting pattern, which "consists of long, narrow strips of tubular ring-shaped frosting that expand radially outward from the center of each Bundt cake[ ] to a point on the outer edge of the cake . . . [and which] are applied around the entire perimeter of the Bundt cake's ring shape." (Dkt. #2-6 at 3–4). A rendering of this frosting pattern is replicated below:



Nothing Bundt Cakes avers that its frosting pattern has become recognizable throughout the country and indicates to the consuming public that any Bundt cake with this unique frosting pattern originated solely from Nothing Bundt Cakes. In support of its application to register the frosting pattern with the U.S Patent and Trademark Office (USPTO), Nothing Bundt Cakes submitted a survey of 304 consumers, 83% of which indicated that they associated the frosting pattern with Nothing Bundt Cakes' products. (Dkt. #2-6 at 8). Using this survey evidence as its primary basis for finding that the frosting pattern had obtained a secondary meaning, on November 4, 2008, USPTO registered Nothing Bundt Cakes' unique frosting pattern pursuant to 15 U.S.C. § 1052(f).[2] (Dkt. #2-5 at 6; Dkt. #2-6 at 4–5, 8). Further, USPTO has designated all of Nothing Bundt Cakes' trademarks, including the frosting-pattern mark, incontestable.

Nothing Bundt Cakes uses local advertising where its franchises exist and international advertising through its website. Nothing Bundt Cakes relies on its frosting-pattern mark in its advertisements—and on the cakes themselves—to direct customers to its physical locations and website for new business. Thus, Nothing Bundt Cakes contends, confusion as to the origin of a cake bearing the trademarked frosting pattern causes Nothing Bundt Cakes to lose business.

Like Nothing Bundt Cakes, Defendant Kerri Thornton's business is primarily the retail sale of Bundt cakes. Also like Nothing Bundt Cakes, Thornton advertises

---

[2] "Except as expressly excluded in subsections (a), (b), (c), (d), (e)(3), and (e)(5) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce."

and sells Bundt cakes online—in Thornton's case, through a Facebook page and through a website located at allaboutbundtcakes.com. In mid-August 2020, Nothing Bundt Cakes' franchisees began complaining to the company that Thornton had been selling and advertising Bundt cakes with a similar frosting pattern in the Dallas–Fort Worth area under the name "Anything Bundt Cakes." Shortly thereafter, Nothing Bundt Cakes' counsel sent Thornton a demand letter alleging that: (1) her use of the word mark ANYTHING BUNDT CAKES was likely to cause confusion with the word mark NOTHING BUNDT CAKES, and (2) her tubular frosting pattern was likely to cause confusion with Nothing Bundt Cakes' trademarked frosting pattern. (Dkt. #2-6 at 8). In response to this letter, Thornton changed her business name to "All About Bundt Cakes," but she continued to use the same frosting pattern. Nothing Bundt Cakes sent a second demand letter, yet its local franchisees continue to report Thornton's use of the same frosting pattern.

Nothing Bundt Cakes' preliminary-injunction motion is limited to its trademarked frosting pattern. Invoking Federal Rule of Civil Procedure 65 and Section 34 of the Lanham Act, Nothing Bundt Cakes requests that the Court enter a preliminary injunction prohibiting Thornton from using Nothing Bundt Cakes' trademarked frosting pattern on her cakes and in her marketing and advertising.

## II. LEGAL STANDARD

Section 34 of the Lanham Act provides that district courts "shall have power to grant injunctions, according to the principles of equity, and upon such terms as the court may deem reasonable, . . . to prevent a violation under subsections (a), (c), or

(d) of section 1125 of this title." 15 U.S.C. § 1116(a); *see also* FED. R. CIV. P. 65 (providing procedural requirements for preliminary injunctions).

A litigant seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "Injunctive relief is a drastic remedy, not to be applied as a matter of course." *ODonnell v. Harris County*, 892 F.3d 147, 155 (5th Cir. 2018) (internal quotation marks omitted) (quoting *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 733 (5th Cir. 1977)). But the party "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (internal quotation marks omitted) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)). A district court has discretion to grant or deny a preliminary injunction. *See House the Homeless, Inc. v. Widnall*, 94 F.3d 176, 180 (5th Cir. 1996).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

The Lanham Act provides that a trademark may be "any word, name, symbol, or device, or any combination thereof" that is used or intended to be used "to identify and distinguish" a person's goods "from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. "A

mark need not be registered in order to obtain protection because '[o]wnership of trademarks is established by use, not by registration.'" *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008) (alteration in original) (quoting *Union Nat'l Bank of Tex. v. Union Nat'l Bank of Tex.*, 909 F.2d 839, 842 (5th Cir. 1990)).

To succeed on a claim of trademark infringement under the Lanham Act, a plaintiff must show: (1) that it owns a "legally protectable trademark," and (2) that a defendant's use of their mark "creates a likelihood of confusion as to source, affiliation, or sponsorship." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017); *see also All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 505 (5th Cir. 2018); *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 184–85 (5th Cir. 2018).

## 1.  Protectable interest in the mark

A plaintiff must establish both that the mark is "eligible for protection" and that the plaintiff is the "senior user" of the mark to have a legally protectable interest in the mark. *Union Nat'l Bank,* 909 F.2d at 844.

### i.  *The Nothing Bundt Cakes frosting-pattern mark is eligible for protection.*

To be protectable, a mark must be "distinctive" in one of two ways. *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 537 (5th Cir. 2015).

> First, a mark is inherently distinctive if its intrinsic nature serves to identify a particular source. . . . Second, a mark has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of the mark is to identify the source of the product rather than the product itself.

6

*Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210–11, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000) (cleaned up).

A mark develops secondary meaning "when, in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Samara Bros.*, 529 U.S. at 210–11. Courts consider the following to determine if a mark has acquired secondary meaning:

> (1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the [mark].

*Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, 799 F.3d 437, 445 (5th Cir. 2015) (quoting *Smack Apparel,* 550 F.3d at 476) (alteration in original); *see also Viacom*, 891 F.3d at 190. In conducting the secondary-meaning analysis, "several 'factors in combination may show that' a mark has developed secondary meaning 'even if each factor alone would not.'" *Viacom*, 891 F.3d at 190 (quoting *Test Masters,* 799 F.3d at 445).

The first factor, length and manner of use, supports Nothing Bundt Cakes, who avers that it has been using the frosting-pattern mark in interstate commerce since 1998—over two decades. *See id.* (holding that continuous eighteen-year use of a mark favored the plaintiff). The second factor, volume of sales, also supports Nothing Bundt Cakes, who avers that its franchisees collectively earn $100 million a year. *See id.* at 190–91 (citing *Smack Apparel*, 550 F.3d at 472, 478 for its holding that $93 million *total* sales weighed in favor of the plaintiff). The third factor—amount and manner of

advertising—also favors Nothing Bundt Cakes, whose advertising of the frosting pattern has not only been pervasive internationally and in the Dallas–Fort Worth area but has also, apparently, been quite effective. *See* (Dkt. #2-6 at 8) (stating that 83% of surveyed consumers associate the frosting pattern with Nothing Bundt Cakes' products); *Viacom*, 891 F.3d at 191 ("The relevant question with regard to factor three . . . is not the *extent* of the promotional efforts, but their *effectiveness* in altering the meaning of the mark to the consuming public." (quotation and brackets omitted)). The fourth factor—the nature and use of the mark in media—also favors Nothing Bundt Cakes. The company and its products are regularly referenced by the media and, relevant here, its cakes are often shown bearing the frosting-pattern mark. *See, e.g.*, (Dkt. #2-5 at 21–29).

The fifth factor, consumer-survey evidence, weighs heavily in Nothing Bundt Cakes' favor. As discussed above, 83% of 304 consumers surveyed associate the frosting pattern with Nothing Bundt Cakes' product. (Dkt. #2-6 at 8). "Although no factor is dispositive," the Fifth Circuit has held that this one "is perhaps the most important," *Unified Buddhist Church of Viet. v. Unified Buddhist Church of Viet.*, 2020 WL 7346470, at *3 (5th Cir. Dec. 14, 2020) (per curiam), and has "consistently expressed a preference for an objective survey of the public's perception of the mark at issue," *id.* (quoting *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 248 (5th Cir. 2010)). Regarding factor six, there is no direct consumer testimony before the Court at this time. Finally, factor seven—the defendant's intent in copying the mark—also favors Nothing Bundt Cakes. Although the Court has no direct evidence

8

of Thornton's intent, her attempts to trade on Nothing Bundt Cakes' goodwill by using business names such as "Anything Bundt Cakes" and "All About Bundt Cakes," which seemingly nod to Nothing Bundt Cakes' own business name, lend to an inference that Thornton likely intended to replicate other aspects of Nothing Bundt Cakes' business as well, such as its frosting pattern.

Because six of the seven factors weigh in favor of Nothing Bundt Cakes, and the remaining factor does not weigh against it, Nothing Bundt Cakes' frosting-pattern mark has acquired secondary meaning and is, therefore, eligible for protection.

### ii. *Nothing Bundt Cakes is the senior user of the mark.*

Having determined that the mark is eligible for protection, the Court must now determine who is the "senior user" of the mark. "The first one to use a mark is generally held to be the 'senior' user." *See Viacom*, 891 F.3d at 186 (quoting *Union Nat'l Bank*, 909 F.2d at 842). Two Supreme Court cases, *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916), and *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918), establish "the general proposition that 'a senior user has exclusive rights to a distinctive mark anywhere it was known prior to the adoption of the junior user and has enforceable rights against any junior user who adopted the mark with knowledge of its senior use.'" *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 700 (5th Cir. 2001); *see also* 5 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION §§ 26:1–26:4 (5th ed. 2019).

Nothing Bundt Cakes asserts that it is the senior user of the frosting-pattern mark based on its continuous use of the mark since 1998. Nothing Bundt Cakes further maintains that it first heard complaints of Thornton's potentially infringing business in late 2020—twenty-two years after Nothing Bundt Cakes' first use of the mark. Because this evidence is undisputed, the Court finds that Nothing Bundt Cakes is the senior user of the frosting-pattern mark.

In sum, because Nothing Bundt Cakes' frosting-pattern mark is eligible for protection and because Nothing Bundt Cakes has shown that it is the senior user, Nothing Bundt Cakes has a protectable right in the mark and an analysis of the likelihood of confusion is necessary to determine if Nothing Bundt Cakes is likely to succeed on its infringement claim.

### 2. Likelihood of confusion

To determine whether use of a mark creates a likelihood of confusion as to affiliation, sponsorship, or source, courts consider the "digits of confusion." *Viacom*, 891 F.3d at 192 (citations omitted). The digits comprise a non-exhaustive list that includes the following seven factors:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion.

*Id.* (citations omitted). "No one factor is dispositive, and a finding of a likelihood of confusion does not require a positive finding on a majority of the digits of confusion." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998). The Fifth

Circuit has also, at times, added an eighth factor, "the degree of care exercised by potential purchasers." *Viacom*, 891 F.3d at 192 (citations omitted).

To establish a likelihood of confusion, Nothing Bundt Cakes must show "a probability of confusion, which is more than a mere possibility of confusion." *Elvis Presley*, 141 F.3d at 193. Nothing Bundt Cakes has shown a likelihood of success under this standard.

The first digit analyzes the type of mark allegedly infringed. As discussed, the Nothing Bundt Cakes frosting-pattern mark has acquired secondary meaning. *See supra* III.A.1.(i). Because the mark has acquired secondary meaning, it has acquired distinctiveness. The more distinctive the mark, the more likely it is that consumers will be confused by competing uses of the mark. *Streamline*, 851 F.3d at 454 (citing *Smack Apparel*, 550 F.3d at 479). A mark that has acquired distinctiveness through secondary meaning weighs in favor of finding a likelihood of confusion under the first digit. *See, e.g.*, *Viacom*, 891 F.3d at 193. Thus, the first digit weighs in favor of Nothing Bundt Cakes.

The second digit concerns the similarity between the two marks. "Even if two marks are distinguishable, we ask whether, under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association." *Viacom*, 891 F.3d at 193 (quoting *Xtreme Lashes, L.L.C. v. Xtended Beauty, Inc.*, 576 F.3d 221, 228 (5th Cir. 2009)). Here, the frosting patterns appear to be identical. These identical frosting patterns could cause a reasonable person to believe that Nothing Bundt Cakes' products and Thornton's

products have a common origin or association and thus this digit weighs heavily in favor of Nothing Bundt Cakes.

The third digit concerns the similarity of the products or services associated with the marks at issue. Here, Nothing Bundt Cakes and Thornton provide essentially identical services. Both sell primarily Bundt cakes, although, because the Court has not had the opportunity to hear Thornton's response, the Court is unaware of whether Thornton sells *only* Bundt cakes. In general, "[t]he greater the similarity between products and services, the greater the likelihood of confusion." *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 666 (5th Cir. 2000) (quoting *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980)). Even if Thornton did offer some products other than Bundt cakes, this is not enough to overcome the similarity of the services and the identical nature of the products which directly compete. *See, e.g.*, *Exxon*, 628 F.2d at 505 (holding that two companies involved in car care had "a strong similarity between their wares and services" even though one sold car parts and the other did not). Thus, this digit also weighs heavily in favor of Nothing Bundt Cakes.

In regard to the fourth digit, Nothing Bundt Cakes' customers are the same as Thornton's, and each party's retail outlets substantially overlap. "The greater the overlap between retail outlets and purchasers, the greater the likelihood of confusion." *Viacom*, 891 F.3d at 194. Here, both parties target customers in the Dallas–Fort Worth area. And while it is unclear whether Thornton has any brick-and-mortar retail outlets, as Nothing Bundt Cakes does, both Thornton and Nothing

Bundt Cakes seek online consumers for deliveries of their Bundt cakes. Thus, this digit also weighs in favor of Nothing Bundt Cakes.

As to the fifth digit, the parties both use at least some similar advertising media: social media platforms and websites. "The greater the similarity in the [advertising] campaigns, the greater the likelihood of confusion." *Streamline*, 851 F.3d at 455 (quoting *Exxon*, 628 F.2d at 506). However, this digit is "minimally probative" if there is not advertising beyond a website selling products. *Id.* at 455 (citing *Smack Apparel*, 550 F.3d at 481). This digit therefore weighs only somewhat in Nothing Bundt Cakes' favor.

The sixth digit considers Thornton's intent. Determining intent requires analysis from several angles. Knowledge of the senior user's mark alone does not create intent. *See id.* at 456 (citing *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)). But when there is awareness, courts should look for evidence of whether "the defendant made efforts 'to pass off its product as that of [the plaintiff]' through 'imitation of packaging material' or 'adopting . . . similar distribution methods'" *Id.* (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980)). Courts have found "an intent to confuse when the evidence indicates that the defendant, in choosing its mark, knew about the plaintiff's mark and intended to capitalize on the plaintiff's popularity." *Id.* (citing *Smack Apparel*, 550 F.3d at 481–83). The same has been true when the defendant did not choose the mark with intent to confuse but subsequently used the mark in a way that "evidenced an intent to trade on [the senior user's] reputation." *Id.* (internal quotation marks

13

omitted) (quoting *Westchester Media*, 214 F.3d at 666). Intent alone can determine the likelihood of confusion: "Although not necessary to a finding of likelihood of confusion, a defendant's intent to confuse may alone be sufficient to justify an inference that there is a likelihood of confusion." *Smack Apparel*, 550 F.3d at 481 (citing *Elvis Presley*, 141 F.3d at 203).

Here, again, the Court does not have direct evidence of Thornton's intent. However, for the same reasons articulated above, *supra* III.A.1.(i), the Court finds that the circumstances—Thornton's use of similar business names to sell a similar product—demonstrate a likely intent to use a similar frosting pattern to confuse consumers as to the origin of Thornton's products. Thus, the sixth digit weighs in favor of Nothing Bundt Cakes.

The seventh digit concerns the question of actual confusion. "Evidence that consumers have been actually confused in identifying the defendant's use of a mark as that of the plaintiff may be the best evidence of a likelihood of confusion." *Id.*, at 483 (quotation omitted). In this regard, testimony of a *single* instance of actual confusion caused by a defendant's representations can serve to prove actual confusion. *La. World Exposition v. Logue*, 746 F.2d 1033, 1041 (5th Cir. 1984). To rebut this, a defendant must provide "overwhelming proof" of no actual confusion. *Xtreme Lashes*, 576 F.3d at 230. Here, however, Nothing Bundt Cakes has pointed to no instances of actual confusion, and thus this digit does not weigh in favor of Nothing Bundt Cakes.

14

The eighth digit addresses the degree of care exercised by potential purchasers of the products at issue. "Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Smack Apparel*, 550 F.3d at 483. Because Bundt cakes are relatively inexpensive, the Court concludes that consumers take less care when purchasing them and that this contributes to an increased risk of confusion among consumers between Nothing Bundt Cakes' and Thornton's products. This last digit also, then, weighs in favor of Nothing Bundt Cakes.

Taken together, and without any rebuttal from Thornton, the "digits of confusion" weigh conclusively in favor of Nothing Bundt Cakes. It is clear that the current frosting pattern Thornton uses and advertises creates "an impermissible likelihood of confusion as to source, affiliation, or sponsorship" of Thornton's products in relation to Nothing Bundt Cakes' products. *Viacom*, 891 F.3d at 198. Accordingly, with a protectable interest in an eligible mark and actual confusion, Nothing Bundt Cakes has proven a high likelihood of success on the merits of its infringement claim.

**B. Likelihood of irreparable harm**

The Fifth Circuit has twice declined to clarify whether a finding of a likelihood of confusion itself creates a presumption of irreparable harm. *See Emerald City Mgmt., L.L.C. v. Kahn*, 624 F.App'x 223, 224 (5th Cir. 2015) (per curiam); *Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008). To the extent that this presumption applies, the Court presumes Nothing Bundt Cakes will

suffer irreparable harm based on the established likelihood of confusion occurring among consumers and the public.

However, even if the presumption does not apply, irreparable harm has been shown in this case. "The absence of an available remedy by which the movant can later recover monetary damages may be sufficient to show irreparable injury." *Emerald City*, 624 F.App'x at 224 (citing *Paulsson*, 529 F.3d at 312). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." *Id.* (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004)).

Nothing Bundt Cakes has shown that it has experienced a loss of control of reputation and a loss of goodwill. To show that it has lost control of its reputation, Nothing Bundt Cakes does not have to prove that Thornton is offering inferior services, only that there is the possibility that the services or goods are not to the satisfaction of Nothing Bundt Cakes. *Paulsson*, 529 F.3d at 313. The evidence confirms that Nothing Bundt Cakes has developed goodwill in at least the Dallas–Fort Worth community, that Thornton is operating in that same community, and that Nothing Bundt Cakes has no control over the goods and services offered by Thornton. Thus, Nothing Bundt Cakes has shown that it has lost control of its reputation and affiliated goodwill. Based on such evidence, Nothing Bundt Cakes has met its burden of demonstrating irreparable harm resulting from Thornton's actions.

## C. Balance of equities

The balance of equities also favors Nothing Bundt Cakes. Although Thornton may incur some cost by having to replace online advertisements or marketing photographs containing depictions of cakes with Nothing Bundt Cakes' trademarked frosting pattern, any such costs would be minimal. Likewise, there is no reason to believe that requiring Thornton to cease using a likely infringing frosting pattern and begin using a non-infringing one would impose any substantial costs on Thornton. Thornton will still be permitted to make, advertise, and sell frosted Bundt cakes. Thus, the harm to Nothing Bundt Cakes resulting from Thornton's use of her likely infringing frosting pattern outweighs any minimal costs that may be imposed on Thornton by terminating her use of the frosting pattern. The burden of losing control of its mark, the loss of customers, and the harm to Nothing Bundt Cakes' reputation and goodwill are greater than the cost to Thornton, who has failed to identify any cost not created by her own likely infringing activities.

Even if Thornton were to suffer some lost profits by switching frosting patterns, "[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.12 (5th Cir. 1991). Likewise, "[a]ny acts after receiving a cease-and-desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts." *Elvis Presley,* 141 F.3d at 205. Nothing Bundt Cakes has sent Thornton a cease-and-desist letter and has served Thornton with its complaint in this case, yet

Thornton continues to sell Bundt cakes with the likely infringing frosting pattern. Thus, Thornton has deliberately accepted the risk of harm when she decided to use the confusingly similar frosting pattern at issue in this case and when she continued to use that frosting pattern following her receipt of Nothing Bundt Cakes' cease-and-desist letter and following service of Nothing Bundt Cakes' complaint in this action.

Nothing Bundt Cakes has shown demonstrable harm as a result of Thornton's likely infringement, including loss of control of its reputation and loss of goodwill. Any speculative harm that would be incurred by Thornton merits little consideration, especially given her failure to appear in this case or at the preliminary-injunction hearing. The balance of equities, therefore, weighs in favor of issuing a preliminary injunction.

**D. Public interest**

A plaintiff must show that the requested preliminary injunction will not disserve the public interest. "The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Sparrow Barns & Events, LLC v. Ruth Farm Inc.*, No. 4:19-CV-00067, 2019 WL 1560442, at *10 (E.D. Tex. Apr. 10, 2019) (citing *T-Mobile US, Inc. v. AIO Wireless LLC.*, 991 F.Supp.2d 888, 929 (S.D. Tex. 2014)); *see also Paulsson*, 529 F.3d at 313 (affirming that enjoining an infringing user serves the public interest). Because Nothing Bundt Cakes has met its burden to show a likelihood of success on the merits concerning its infringement claim against Thornton, it has also shown that a preliminary injunction will serve the public interest.

18

*   *   *

For the foregoing reasons, the Court holds that a preliminary injunction is warranted. Thornton is, therefore, prohibited from using Nothing Bundt Cakes' frosting-pattern mark and all confusingly similar variations of the foregoing, either by itself or with any other designs, in any form of interstate commerce related to the food and beverage industry. Further, Thornton must remove from commerce any advertisement or offer for sale in commerce of its services or products displaying the Nothing Bundt Cakes frosting-pattern mark as well as all confusingly similar variations of the foregoing, either by itself or with any other designs, including but not limited to Thornton's website and social media.

### IV. CONCLUSION

It is therefore **ORDERED** that Nothing Bundt Cake's Motion for Preliminary Injunction, (Dkt. #2), is hereby **GRANTED** in accordance with the following:

Pursuant to Federal Rule of Civil Procedure 65, Thornton, as well as all those in active concert or participation with Thornton, is **ENJOINED** from using Nothing Bundt Cakes' frosting-pattern mark, shown below—

| U.S. Reg. No. | First Use Date | Reg. Date | Mark |
|---|---|---|---|
| 3,526,479 | 10/15/1998 | 11/4/2008 |  |

—and from using all confusingly similar variations of the foregoing, either by itself or with any other designs, in any form of interstate commerce related to the food and beverage industry. In particular, Thornton is enjoined from using the mark:

    a.  To decorate any Bundt cakes sold in retail or wholesale;

    b.  In any signage she uses for any physical retail facility in Texas;

    c.  In any advertising or promotional materials through Facebook or her website at anythingbundtcakes.com, allaboutbundtcakes.com, or through any other internet domain name or any other form of social or print media; and

    d.  In any flyers, brochures, publications, or other related materials.

It is further **ORDERED** that, Pursuant to Federal Rule of Civil Procedure 65(c), Nothing Bundt Cakes shall post a bond in the amount of **$1,000.00**, by depositing this amount with the Clerk of the Court within **three business days** of this order.

It is further **ORDERED** that, because Thornton has been served with the complaint and summons in this case but has not yet made an appearance, Nothing Bundt Cakes shall provide a copy of this order to Thornton within **three business days** of this order.

It is further **ORDERED** that Nothing Bundt Cakes' Motion to Expedite Discovery and for Briefing and Hearing Schedule, (Dkt. #4), is hereby **DENIED as moot**.

**So ORDERED and SIGNED this 22nd day of February, 2021.**

_____

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE